KINGS· COUNTY.—HON. W. L. LIVINGSTON, SURROGATE.—
September, 1881.

## SPAULDING *v.* GIBBONS.

*In the matter of the probate of the will of* PATRICK
FLAHERTY, *deceased.*

It is not necessary that a subscribing witness to a will should actually see
the testator sign; it is enough (in the absence of an acknowledgment),
if his signature was affixed in the presence of the witness; and a con-
structive presence, as being in an adjoining room, the door to which
was open, may be deemed a compliance with the statute.

Upon an application for the probate of a will, to which there was no attes-
tation clause, the testimony of the subscribing· and other witnesses
showed that the necessary formalities were complied with, except that
there was a question whether the testator signed in the presence of one
of the subscribing witnesses. There was no claim that the testator
acknowledged his subscription. It appeared that the execution took
place while testator was in bed, in a small room; that the will was
read to him, and he said it was what he wanted, and declared that he
had his full senses and understanding; that he asked one witness to
sign, while the other witness was requested so to do by a third person
in testator's presence. The former witness testified that testator signed
in the presence of both witnesses, before they affixed their signatures,
and declared the paper to be his last will. The latter witness did not
remember whether he saw testator sign or not, but the evidence showed
that he was, at the time, either in the same room or in an adjoining
room, in such a position that he could see the signing after his attention
was drawn to what was going on. The whole transaction occupied
about five minutes.

*Held,* that, upon the evidence, the testator must be considered to have
signed in the presence of each subscribing witness, and that the proper
execution of the will was proved.

APPLICATION, by Rose Gibbons, executrix, for the
probate of a will; opposed by Mary Spaulding, a. sister
of decedent, and others.

The facts appear sufficiently in the opinion.

JOHN COONEY, *for proponent.*

McGUIRE & KUHN, *for contestants.*

FREDERICK A. FOX, *special guardian for infants.*

THE SURROGATE.—No testimony was given on the part of the contestants, and the only question that arises on the evidence is as to the proper execution of the will.

The testator was of sound and disposing mind, and the will was drawn to conform to his wishes. There is no attestation clause. Michael Devine, one of the attesting witnesses, says that he did not see the testator sign the will; that it was read to the testator in his presence; that, at the time, the testator said that he had his full senses and understanding, and then the witness was asked to sign it by Mr. Martin, in the presence of the testator, and he did so; that Mr. Ryan, the other witness, was there, but that he did not sign in his, Devine's, presence. He subsequently states that he could not say that Ryan did not sign in his presence; that he did not remember; and when asked if he remembered that the testator did not sign in his presence, he answered: "No, sir, I could not say that he did not."

John Ryan, the other witness, says that he was present when the will was drawn; that Devine was not then present, but was sent for, because Martin, a cousin of the deceased, did not wish to be a witness; that after Devine came, the will was read to the testator, in the presence of Devine; that the testator signed in the presence of Devine; that the testator requested him, Ryan, to be a witness to the will; that he signed as a witness and handed the pen to Devine, who also signed as a witness; that the testator said that the paper was his

last will, and called upon the bystanders to witness that he was perfectly sane and understood what he was doing; that all this was done while Devine was present; that Devine could not stand in the bedroom, where the testator was lying in bed, because it was too small; but that he stood in the door-way, in the entrance to the door, where he could see and hear all that was done; that he came into the small room to sign the will.

James Martin says that, after the will was drawn, he read it to the testator in the presence of the two witnesses; that the testator said it was what he wanted; that he wanted to give that to Rose,—she took care of him and he wanted to give it to her; that then Martin asked him if he could sign it, and he said he could; that he leaned out of bed and signed it on a chair; that Mr. Ryan took the will and placed it on a table in the same room, and signed it, and that Mr. Devine signed it also at the same time; that the whole execution, including the signing by the witnesses, did not take over five minutes, and that he is sure that Devine was present in the small room when the testator signed.

Dr. Archer dictated the will to Martin, according to instructions given to him by the testator, and was present when the will was read over to the testator; but he does not think that he was present when it was executed, while Ryan and Martin both think that he was.

The testimony is not as satisfactory as it might be, but the weight of it is in favor of a proper execution of the will. The fact, which is the least satisfactorily proved, is the signing of the will by the testator in the presence of both witnesses.

Devine will not say positively that he was not present

when the will was signed, while Ryan and Martin are both sure that he was, although one says that he was in the small bedroom where the will was signed, and the other that he was standing in the door-way, from where he could see and hear all that was going on at the testator's bedside, the bedroom being very small.    Both ·Martin and Ryan also agree that, after the will was read to the testator, it was signed by him, and then by the witnesses.    I understand from the testimony that one act followed the other, without delay or interruption ; Martin says the whole thing took about five minutes, and Devine says that he was not in the room more than ten or fifteen minutes altogether ; so that, if he was present, as he admits, when the will was read to the testator, and after that signed it as a witness, he must have been also present when the testator signed.    He does not say that he was not present, but only that he did not see the testator sign.    It was not necessary that he should actually see him sign.    If he was in the same room with him, or in the adjoining room, in such a position that he could see him sign, after his attention had been drawn to what was going on, the signing will be considered to have taken place in his presence, particularly as, on further examination, he says that he does not remember whether or not he saw the testator sign the will (*Redf. on Wills*, ch. 6, 218, as to the meaning of the word "presence ;" Matter of Gilman, 38 *Barb.*, 364 ; Peck *v.* Cary, 27 *N. Y.*, 9, 25, 29, 30, 38).

Upon the whole, I think the proper execution of the will is proved, within the decisions in the following cases : Vaughan *v.* Burford (3 *Bradf.*, 78) ; Belding *v.* Leichardt (2 *Sup. Ct.* [*T. & C.*], 52) ; Thompson *v.*

Stevens (62 *N. Y.* 634 ); Coffin *v.* Coffin (23 *Id.*, 9); Peck *v.* Cary (*supra*) ; Matter of Gilman (*supra*).
Decreed accordingly.