#### (*Surrogate's Court, New York County.*   September 6, 1889.)

1. WILLS—PROBATE—EVIDENCE.

   Where a will is on its face properly executed and attested, and one of the subscribing witnesses, whose memory of other circumstances connected therewith is defective, states that she was not asked to sign the will, and the other subscribing witness, who also drew the will, and a third person who was present at its execution, testify positively to the contrary, and there is nothing to show fraud, the will should be admitted to probate.

2. SAME—VALIDITY—REFERENCE TO LETTER.

   Where a testator bequeaths one-fourth of his residuary estate to his executor for purposes to be made known by a letter written by the testator, said letter to form a part of the will, and the letter cannot be found, the will is valid except as to the one-fourth, as to which testator is intestate.

Application for the probate of the will of Joseph B. Frey, deceased.

*George W. Carr,* for proponent.   *Edward B. Crowell,* for contestant.

RANSOM, S.   The instrument, though without date, appears by the testimony to have been executed on the 17th day of April, 1882, the date of a letter referred to in the body of the paper.   The subscribing witnesses were Charles N. Hilliard, the attorney who drew the will and superintended its execution, and Mrs. Clemence Dodge.   During the seven years that succeed the event, the memory of Mrs. Dodge as to the occurrence had become nearly obliterated, unless her testimony was given in a disingenuous spirit, which, from a careful reading of it, seems not improbable.   When the attention of Mr. Hilliard was first called to the subject after the testator's decease, he said that his recollection was vague as to the circumstances attending the transaction, but, on reflection, he was able to recall the facts.   If his testimony is to be credited, the requirements of the statute were substantially complied with.   His statements in that regard are corroborated by the proponent, Mr. Clirehugh, whose wife was a sister of the decedent, and is a legatee named in the will.   The decedent's widow, by her attorney, contested the probate of the paper, alleging that it was not the decedent's free and unconstrained act, and that it was not executed in conformity to the statute.   Mr. Hilliard states that, two days before the paper was executed, Mr. Clirehugh gave him some headings of the proposed will, of which he took memoranda.   On the day on which it was drawn, he proceeded to an apartment in the residence of the decedent, whom he had never until then seen, and the provisions of the instrument were discussed by the decedent and Clirehugh, and he then drew the will.   After its completion, Mrs. Dodge, who was in the apartment of Mrs. Frey, and who was to remain with her during the night because the decedent was to leave for Washington, was asked by him to come into the room where the instrument had been prepared, he stating that she was wanted to witness a paper for the disposition of his patents, and that he did not say that it was his will.   In this statement she is confirmed by the testimony of the contestant.   She, however, did not accompany Mrs. Dodge into the other room. When there, Mrs. Dodge states that no one asked her to sign her name as a witness to a will.   Her memory is singularly perverse in respect to nearly all the circumstances attending the execution, and the greater part of her testimony is a succession of answers, "I cannot remember," to the questions propounded in respect to the successive acts to constitute the valid execution of the will.   Mr. Hilliard, in 1882, had been admitted to the bar for three years,

and he states that during that period he had drawn six wills. He further testifies that on this occasion, before proceeding to the decedent's residence to draw the paper, he took the precaution to look at the statute in respect to its requirements. At the foot of the instrument is an attestation clause in his handwriting; and both Hilliard and Clirehugh say it was read at the time of the execution in the presence of both witnesses.

It is incredible that a lawyer of any experience in superintending the execution of wills, unless he was a party to a fraud, should have written the recitals contained in the clause, and then signed them, if the events therein stated had not taken place; and as he testifies that his feelings are not cordial towards the proponent, Clirehugh, because he had refused to pay him for his services in connection with the matter, I certainly see no reason to believe that he would vary his statements from the truth. Nor does the fact that Clirehugh and Hilliard do not agree in respect to some of the important details of an interview cause me to doubt that the will was properly executed. Under a well-settled principle of law, if, by reason of the lapse of time, witnesses are not able to recall the circumstances connected with the execution of a testamentary instrument to which they have affixed their signatures, the existence of an attestation clause reciting the facts requisite for a due execution, and to which the witnesses have affixed their signatures, comes in aid of probate; and in this case, as its statements are re-enforced by the positive recollections of Mr. Hilliard and Mr. Clirehugh, I am satisfied that the will was properly executed.

The contestant calls in question the construction and legal effect of the disposition of the personal estate of the decedent upon a further ground. By the will the decedent bequeaths to his wife one-third of the profits accruing from certain royalties on patents, and one-third of the proceeds of the sale and manufacture of a certain other patent to be issued to him, and gives the residue of his estate to be divided into four equal parts,—one to his mother; another to his sister Mrs. Clirehugh; another to his brother August William; and the fourth part "unto my executor, to be devoted by him to and for a certain purpose made known unto said executor by a certain letter written by me to my said executor, and bearing date April 17, 1882; the said letter to form a part of this, my will." No such letter was found after the decedent's death. Mr. Hilliard states that he was informed by the decedent and by Clirehugh, at the time of drafting the will, that the letter was then in existence. In this respect, the recollection of Mr. Clirehugh is different. If it had been written at the time, and was properly identified, its directions would be followed as a part of the instrument; but as it was not found, and I hold that the paper propounded was properly proven as the decedent's will, the non-production of the letter cannot invalidate the provisions for the disposition of three of the four parts of the residuary estate, and that the fourth part must go to the parties in interest, under the statute of distributions.