An error, if any, in striking out certain evidence is cured by the admission of the same or similar testimony later on in the trial. Mann v. Barrows, 14 N. Y. St. Rep. 10.

The court is not bound to strike out erroneous evidence after its admission. Simpson v. Man. R'y Co., 17 N. Y. St. Rep. 68. The proper remedy is to ask the court to direct the jury to disregard it. Id.

---

In the Matter of the Revocation of Probate of the Will of ANN VOORHIS, Deceased.

*Supreme Court, First Department, General Term, November 8, 1889.*

1. *Will. Execution.*—A will drawn pursuant to instructions of the testatrix, corrected, signed and executed as the law requires, is entitled to probate, where she understood its contents and designed it to be her will, though she is aged, capricious and illiterate.
2. *Same.*—In such case, where she, in substance and effect, either directly or through the attorney in her presence, requests two persons to act as subscribing witnesses, it is so far a sufficient compliance with the statute.
3. *Same. Revocation.*—Mere dissatisfaction on the part of the testatrix with her will, not evidenced or followed by the requisite statutory acts, does not amount to a revocation.

Appeal from a decree of the surrogate of the county of New York, denying an application to vacate and annul the probate of a will, and confirming the probate thereof.

*H. M. Whitehead*, for appellant.

*C. E. Tracy* and *D. M. Helm*, for respondent.

DANIELS, J.—The will, which is in controversy in this appeal, was executed on the 20th of December, 1879, and the testatrix died on the 30th of January, 1882. At the time

of the execution of the will she was of the age of seventy-nine years. She had no children, parents, brothers or sisters. Her relatives were nephews and nieces, and grandnephews and grandnieces. Her relations with most of them were friendly and agreeable. But when she came to dispose of her estate by the will, after disposing of a small part of it in the way of legacies, she devised and bequeathed all the rest, residue and remainder to The American Bible Society and the American Home Missionary Society. The application for the revocation of the probate of the will was made by Harriet B. Evans, who is a niece of the testatrix. And it proceeded upon the allegations that the paper which had been admitted to probate as the will of the testatrix had not been signed by her, that she did not acknowledge it, and was not of sound mind and memory at the time of its date, or capable of making a will, and did not understand or intend the execution of this instrument as her will, and that the formalities required by the statute to be observed to authenticate it as a will had not been complied with.

To sustain the application evidence was given of statements made at different times by the testatrix, that she did not intend or design to leave any part of her property to societies, but that it should be disposed of among or for the benefit of her relatives. And from this evidence it is entirely reasonable to conclude that at the times when these statements were made she did entertain that design. But she was further shown to have been capricious and changeable in her disposition, and had obtained wills drawn under her direction which never were executed by her. She was sensitive and excitable, and easily took offense at trivial acts of her relatives, which she regarded or considered to be slights upon herself. She was an illiterate person, and further evidence in support of the application to revoke the probate of the will was given to the effect that she was not able to read or write. But neither this evidence, nor her capricious disposition, nor her advanced age, precluded her from making

a valid will, if it appeared that she understood its contents
and designed it to be her testamentary act. And in support
of this will very direct evidence to that effect was given
upon the hearing.

The instrument in controversy was prepared as the will of
the testatrix by Hamilton Wallis, who was sworn and ex-
amined as a witness in its support. He testified that he re-
ceived instructions from the testatrix, either at his office or
at her house, and that he took down those instructions as
they were given to him by her; that he then prepared a draft
of the will, which he afterwards read to her at her residence
several days before the execution of the instrument in con-
troversy ; that alterations were made in the draft during the
time it was read to the testatrix, and that the instrument
admitted to probate was an exact copy of the draft, with the
alterations suggested by her.

This evidence sustained the conclusion that the instrument
was drawn in pursuance of the authority and instructions of
the testatrix, and that it conformed to those instructions and
was understood by her in the dispositions it directed should
be made of her estate. Before the time of its execution she
requested the two persons who subscribed as witnesses to the
will to repair to her house at a time designated for that ob-
ject, to witness her will. They met at her residence at that
time, and both testify that the instrument which was pro-
duced was signed by the testatrix, and by themselves as wit-
nesses. The evidence of Mr. Noe, one of the subscribing
witnesses, is that Mr. Wallis asked Mrs. Voorhis if she wished
these gentlemen to witness her will, and she said yes, and
then " she signed the will herself in my presence. I saw
her sign." Mr. Wallis' evidence as to the same fact, as it is
contained in the printed case, is incomplete, but it is probable
that it was intended to authenticate the fact as it was stated
by Mr. Noe. His testimony was that Mrs. Voorhis signed
her name to it, and the two gentlemen, after I had asked her
if she had signed and sealed this paper and published and

declared it as her last will and testament, and requested these gentlemen to execute it as witnesses, and they then signed it as witnesses. The other subscribing witness, Joseph A. Sterling, was by no means so clear in his recollection as to the request to the witnesses to sign the will as was Mr. Noe. But he stated that the lawyer, or Mrs. Voorhis, said it was a will. And he thinks she gave the paper to Mr. Noe and then he sat down and signed it at the table, and then this witness sat down in his place and also signed it. He further stated that it was said to be Mrs. Voorhis' will. He thought the lawyer said so, and it was understood so because he was asked to go there. The paper he said was given to him and he was asked to sign it as Mrs. Voorhis' will. The statement was : " There is Mrs. Voorhis' will ; will you sign it ? Mrs. Voorhis was present when that was signed." And his evidence is that it had already been signed by her.

From this evidence it is entirely natural to conclude that she understood the contents of the instrument and designed it to be her will. And also in substance and effect, either by her own direct request, or that of the attorney in her presence, and acting in her aid and assistance, requested these two persons to subscribe it as her will, and as subscribing witnesses. And that conformed to what was essential for this purpose as the statute had prescribed and directed it. Gilbert v. Knox, 52 N. Y. 125.

After the instrument had in this manner been executed, the witness, Nancy R. Howard, testifies that she had a conversation with Mrs. Voorhis, who told her that she had willed most of her property to charitable institutions, and said that her nieces would not get as much as they expected. This was still further evidence in proof of the fact that Mrs. Voorhis understood the substantial contents of the instrument, and that it had been drawn and executed in such a manner as to carry her intention and design into effect. And it was not overcome by the testimony given on behalf of the contestant, and was not substantially inconsistent with that evidence.

For while it is entirely probable that her disposition generally was to distribute her property among her relatives, yet at the time when this instrument was signed by her, and these witnesses, she entertained a different purpose. And that was to dispose of the bulk of her estate for the benefit of these two societies.

She may not have been aware of the extent of her property, although she probably was, as her money must have been put into the tin box, where it was found, by herself. But at this time she evidently intended to bestow it, whatever it was, upon these societies, after satisfying the legacies previously mentioned by her. That she complained of the insufficiency of her income when she had a large sum of money in her immediate possession will not invalidate her act. She was, without doubt, a penurious person, not only frugal, but actually denied herself of luxuries which she had the ability to obtain and enjoy. But these were not controlling circumstances in the case, as long as it appeared satisfactorily from the other evidence that she had directed the instrument to be drawn as it was, and executed it, intending to make the disposition which it directed of the residue of her estate.

After this instrument was in this manner subscribed, and shortly before the time of her own decease, she became dissatisfied with it and intended to execute another distributing her property among her relatives. This appears from the evidence of the appellant, as well as of that of Mr. Ridley, who drew another instrument to be executed by the decedent. That was still more complicated in its details than the instrument here in controversy. But the evidence warrants the belief that it conformed to her intentions and was understood by her. But before the time assigned for its execution she became unconscious and remained so to the period of her decease. And on that account this instrument was not executed and did not go into effect as a will. What is proved to have transpired, although indicating a final inten-

tion on her part different from that contained in the instrument executed, did not work its revocation. Dissatisfaction on her part with the directions contained in it for the final disposition of her estate could not be attended with that result, as long as the instrument at the time when it was made and published truly expressed her design for the disposition of her property. To constitute a revocation because of dissatisfaction with a previous testamentary disposition, the law has required some other will in writing, or some other writing, declaring the revocation or alteration, executed with the same formalities with which the will itself is required by law to be executed, or that the instrument so executed has been burned, torn, canceled, obliterated or destroyed with the intention and effect of revoking it by the person executing it, or by another person in his or her presence acting by his or her direction and consent. 3 R. S., 6th ed., 63, § 40.

Various exceptions were taken on the part of the contestant to rulings made by the surrogate excluding evidence which was offered in the course of the hearing. But all the evidence which was strictly pertinent and relevant to the case seems to have been received.

If that which was rejected had been also added on the hearing, no different result would have been reached in the case. As full and complete a statement of the inclinations, ability, disposition and acquirements of the testatrix was received as could be of any service to the contestant. And upon the consideration of all the evidence the surrogate was clearly warranted in reaching the conclusion which he did, that the controverted instrument was, in fact, as well as in law, the last will and testament of the decedent. There is no ground presented upon which this decision can be interfered with, but the decree should be affirmed, without including costs against the appellant, inasmuch as the final intention of the testatrix was to have made a different disposition of her property.

BARRETT, J., concurs.

VAN BRUNT, P. J.—I do not think the court has any right to consider the evidence of Mr. Wallis as to instructions received by him, etc., as these were communications to which he had no right to testify. Without his evidence there was ample proof to sustain the conclusions arrived at by Mr. Justice DANIELS.

Concur in the result.

## NOTE ON "REVOCATION OF WILL."

A will cannot be revoked by parol, much less by subsequent declarations that its provisions were not understood by the testator. Matter of Hammond, 16 N. Y. St. Rep. 977. If such instrument does not express the testator's wishes, it should be revoked either by its destruction or mutilation, or by the execution of a subsequent will or codicil. Id.

A will cannot be revoked by an instrument executed as a testamentary paper in the presence of only one subscribing witness. Barry v. Brown, 2 Dem. 309.

The presumption of law is that a will, shown to have been in the custody of the deceased and not subsequently found among his papers, has been revoked by him. Collyer v. Collyer, 25 W. Dig. 82. This presumption is not rebutted by showing that the relatives of the decedent, whose interests are hostile to the alleged will, had an opportunity to effect its destruction. Id.

Where a will, which was last seen in the possession of the testator, cannot be found after his death, the legal presumption is that he destroyed it for the purpose of revocation. Matter of Nichols, 40 Hun, 387.

An endorsement of revocation duly executed and published, and written upon two of three triplicate copies of the will, is a sufficient revocation. Biggs v. Angus, 3 Dem. 93.

Where one copy of a will, executed in duplicate, has been destroyed by the testator animo revocandi, though there is no proof that the other is not still intact, but it has not been seen at any time after its execution in the testator's possession, it will be presumed, in the absence of evidence to the contrary, that the destruction of the one paper, which was within his reach, was intended to nullify the other. Asinari v. Bangs, 3 Dem. 385.

The presumption as to the revocation of a will by reason of the erasure of the signature was considered in Matter of Wood, 32 N. Y. St. Rep. 286.

A new will revokes the whole of the prior will. Clark v. Kingsley, 37 Hun, 246. An advancement which might have satisfied a provision in the former will, does not satisfy a similar provision in a new will made subsequent to the advancement, though it might be otherwise of a codicil. Id. A codicil republishing a will does not revive a legacy already paid. Id.

The revocation of a will, which itself contains a clause revoking all former wills, will not revive a former will.   Biggs v. Angus, *ante.*

An express revocation will prevail, even though the object of the new will fails as against public policy.   Matter of Benedict, 32 N. Y. St. Rep. 139.

The codicil will not operate as a revocation of the previous testamentary provisions beyond the clear import of its language.   Redfield v. Redfield, 126 N. Y. 466.

The codicil, in this case, was held not to revoke an annuity given by the will, or affect its charge upon real estate.   Id.

Discordant dispositions in a codicil so far operate to revoke the will. Newcomb v. Webster, 113 N. Y. 191.

Where there are two distinct testamentary instruments and inconsistent devises or bequests, the latter is a complete revocation of the former. Newcomb v. Webster, 113 N. Y. 191.

Disposition by a codicil, if complete, prevails over any different disposition contemplated by the will.   Viele v. Keeler, 59 Hun, 617.

A provision in the codicil was construed, in this case, to revoke the residuary clause in the will.   Matter of Willetts, 112 N. Y. 289.

A subsequent conveyance of the property, which is the subject of the will, and to which the latter will does not refer, revokes the provision of the earlier will.   Estate of Baby, 20 N. Y. St. Rep. 869.

Where the provisions in a former and a later will are wholly inconsistent, the latter completely revokes the prior provision.   Id.

The will of a widow is revoked by her subsequent marriage.   Matter of Kaufman, 61 Hun, 331; 131 N. Y. 620.

As to when the marriage will not be presumed to have taken place prior to making the will and codicil.   Matter of Gall, 31 N. Y. St. Rep. 954; 57 Hun, 591.