## In re BOARDMAN'S WILL.

*(Surrogate's Court, Cattaraugus County, December 29, 1891.)*

1. WILL—WHAT IS A SUFFICIENT EXECUTION.

A will will be admitted to probate when the testator sent for the subscribing witnesses to come to his house to witness the execution, and he was explicit in his declaration that it was his will, and in his request to them to sign as witnesses, and one of the witnesses was explicit in testifying testator signed the will in their presence, although the other witness had no definite recollection, but had an impression it was not signed by testator in their presence, and that he did not observe his signature—ten years having elapsed from its execution and the latter witness having written the date of the will immediately preceding the signature of the testator, thereby allowing the assumption that so important an omission as the absence of testator's signature would have attracted his attention.

2. SAME—PROOF OF EXECUTION BY INSPECTION.

When there was a doubt as to whether testator executed a codicil to his will in substantial compliance with the statute, and both witnesses testified that testator said the paper he produced was a codicil to his will and asked them to subscribe as witnesses, which they did in his presence, *held,* that as an examination of the instrument showed that the signatures were all written with the same ink, and apparently at the same time, the codicil should be admitted to probate.

3. WILL—CONSTRUCTION—UNCERTAINTY OF BENEFICIARY.

A bequest to "the heirs of" a deceased daughter is not void for uncertainty as to the beneficiary.

4. SAME—PROVISION AS TO MONUMENT.

The will in question directed that after payment of debts the balance and remainder of the estate, real and personal, should be expended in the building of a monument and a suitable fence and fixtures. *Held,* that this was no more than a direction to his executors to set apart a reasonable portion of the estate, suitable to testator's station in life, for that purpose.

Proof of will.

Nash & Willson and W. S. Thrasher, for proponents; D. E. Powell and William Woodbury, for contestants.

SPRING, S.—The testator sent for the subscribing witnesses to come to his house in the night, to witness the execution of his will. It had been previously drawn, and he personally supervised its execution. He was explicit in his declaration that it was his will, and in his request to them to subscribe it as witnesses.

One of the witnesses is explicit in testifying testator signed the will in their presence, while the other has no definite recollection, but an impression it was not signed by the testator in their presence, and that he did not observe his signature.

Ten years have elapsed since its execution, and Mr. Hunton has evidently forgotten the details of the occurrence.

He wrote the date of the will immediately preceding the signature of the testator, and so important an omission as the absence of the name of the testator would have attracted his attention.

There is more doubt as to the codicil. That instrument, however, does nothing but appoint an executor, and I think there was in its execution a substantial compliance with the statute.

He took the will and codicil to the store personally, and while this codicil was not a holograph instrument, it was prepared for him before he went to have it executed. It was drawn on the back of the original will, and testator was evidently familiar with the formalities incident to the execution of wills, as is shown by the clearness of his directions when the original will was drawn.

Both witnesses agree that he said it was a codicil to his will and asked them to subscribe as witnesses, which they then did in his presence. In controversies of this kind it is proper to make an inspection of the document itself. See Matter of Wilcox, 37 St. Rep. 462. And an examination of the signatures convinces me they were all written with the same ink and apparently at the same time.

Both the will and codicil should be admitted to probate.

The will was as follows:.

First. I give and bequeath to the heirs of my daughter

*Mariah* Theresa Eddy now *diseased* the sum of five hundred (500) dollars *shair* and *shair* alike.

Second. That after paying all my debts after my death it is my will and direction that the *ballance* and remainder of all my property, *boath* real and personal, *shal* be expended in the building and erecting a monument at the head of my grave *togather* with *sutible fense* and fixtures.

The construction of the second clause of the will is put in issue by the objections filed. The counsel for the contestants, in a very elaborate brief, argues with much ingenuity that there is no ascertained beneficiary, and hence that the will is void for uncertainty, and cites a number of authorities, of which Holland v. Alcock, 108 N. Y. 312, 14 St. Rep. 761, and Read *et al.* v. Williams, 125 N. Y. 560, 35 St. Rep. 909, are samples. I do not think those cases are applicable. Had the testator directed in plain, unequivocal terms that his executors expend a reasonable sum in the purchase of a monument to be erected at his grave, no one would have questioned the validity of the direction. The erection of a monument is one of the incidents to the administration of an estate of a decedent of the same class as funeral expenses. Wood v. Vandenburgh, 6 Paige, Ch. 277-285. And such a provision is one that a testator has the right to make, even to the extent of all of his property. Pfaler v. Raberg, 3 Dem. 360; Matter of Frazer's Accounting, 92 N. Y. 239-249; Emans v. Hickman, 12 Hun, 425.

But a fair interpretation of this clause is no more than a direction to his executors to set apart a reasonable portion of his estate for the purposes stated. He was a farmer who had acquired a small competence by dint of the frugality and self denial which the life of a small farmer implies. He had reared a large family who had remained with him until they severally attained majority. He lived at a distance even from a small village, and a man of his stamp would hardly desire that the entire savings of his provident life should be devoted to the erection of a tombstone in a country graveyard, soon to be covered over with the weeds and vines, which are the usual

adornments of such a place.   He provided for a suitable fence and fixtures, and evidently had in mind a corresponding fitness in the purchase of his monument.   But he preferred to trust to the wisdom of his executors in making this outlay than to his children, who had left home and become scattered.

In Emans v. Hickman, 12 Hun, 425, *supra,* a similar direction was construed to mean an expenditure suitable to his station in life.   While a literal interpretation of the language employed would seem to imply testator intended to have all his residuary estate used in the erection of this monument and the adornment of his burial lot, yet, in arriving at his real intent, we must look at all the circumstances surrounding his life, and they would not uphold so extravagant an outlay.

Certainly this interpretation does no greater violence to the language used than in the case cited.   The testator provided in this clause that all of his property remaining after the payment of his debts should be expended for the purposes stated.   A literal construction of this language would lead to the exclusion of the bequest in the first clause, and such assuredly was not his intention, for he designed the monument clause to be subsidiary to the previous bequest.

Wherefore, a fair interpretation of his will leads to about the following results:

First.   The payment of the expenses of this proceeding, and of administration.

Second.   The payment of his debts and ordinary funeral expenses.

Third.   The payment of the first bequest.

Fourth.   The purchase of a monument and the adornment of his burial lot, for which no more than $500 should be expended.

Fifth.   The balance to his heirs-at-law and next of kin in accordance with the laws of descent and distribution.

(Note as to what is a due execution of a will under 2 Rev. Stat. section 40, and Code Civ. Pro. section 2620.

STATUTES.—GENERAL OBSERVATION.—TESTATOR'S SIGNATURE.
—ACKNOWLEDGMENT. — PUBLICATION. — SIGNATURE OF
WITNESSES AT TESTATOR'S REQUEST.—EXECUTION UNDER
CODE CIV. PRO. SECTION 2620.

## STATUTES.

It is provided by 2 Rev. St. 63, section 40, that every will shall be executed and attested in the following manner:

1. It shall be subscribed by the testator at the end of the will.

2. Such subscription shall be made in the presence of each witness or acknowledged to each witness.

3. The testator at the time of making such subscription, or acknowledgment, shall declare the instrument so subscribed to be his last will and testament.

4. There shall be at least two attesting witnesses, each of whom shall sign his name as a witness at the end of the will at the request of the testator.

Code Civ. Pro. section 2620, provides that "If all the subscribing witnesses to a will are, or if a subscribing witness, whose testimony is required is, dead, or incompetent, by reason of lunacy or otherwise, to testify, or unable to testify; or if such a subscribing witness is absent from the State; or if such a subscribing witness has forgotten the occurrence, or testifies against the execution of the will, the will may nevertheless be established, upon proof of the handwriting of the testator, and of the subscribing witnesses, and also of such other circumstances as would be sufficient to prove the will upon the trial of an action."

## GENERAL OBSERVATION.

It will be observed under the statute there are four essential requisites to the due execution of a will:

1. Testator's signature at end of will.

2. His signing, or acknowledging his signature, in the presence of each witness.

3. Publication by testator at the time of signing or acknowledgment.

4. Two attesting witnesses, each of whom shall sign his name as a witness at the end of the will, at testator's request.

There must be a substantial compliance with these requisites

otherwise the will is not properly executed, even although there is not the slightest fraud.   (Matter of Andrews, 162 N. Y. 1.)

Attestation clauses to wills usually contain an allegation that the witnesses signed the will in the presence of testator and of each other.

But this, although desirable, is not necessary.  (Spaulding v. Gibbons, 5 Redf. 316; Lyon v. Smith, 11 Barb. 124; Hoysradt v. Kingman, 22 N. Y. 372; Matter of Phillips, 34 Misc. 442.)

If it is not intended that the witnesses should, or they do not, sign in presence of testator and of each other, the draughtsman should, before the witnesses sign, omit the allegation from the attestation clause, as an untrue attestation clause may result in a failure to establish statutory execution.

The burden of proof is on the proponent to prove that the will was duly executed, and the requirements of the statute complied with.   (Matter of Hurlbut, 48 App. Div. 91; Matter of Elmer, 88 Hun, 290, 68 St. Rep. 417.)

Even if the proof be clear as to formal execution and attestation, proponent must show affirmatively that testatrix had an intelligent knowledge of the contents of the will.    (Barry v. Boyle, 1 T. & C. 422; Townsend v. Bogart, 5 Redf. 93; Hyatt v. Lunnin, 1 Dem. 14; Cooper v. Benedict, 3 id. 136; Heath v. Cole, 15 Hun, 100; Jones v. Jones, 42 id. 563; Matter of Green, 67 id. 527; Matter of Sampson, N. Y. L. J., June 7, 1891 (N. Y. Sur. Ct.); Rollwagen v. Rollwagen, 63 N. Y. 504; Re De Castro, 32 Misc. 193.

An attorney who prepares and superintends the execution of a will, but is not a subscribing witness thereto, is not a competent witness as to its execution.   (Matter of Sears, 33 Misc. 141.)

## TESTATOR'S SIGNATURE.

A will is not subscribed at the end thereof within the meaning of the statute, when it is drawn on a printed blank of four pages joined at the sides, and the draughtsman having filled the blank on the first page, turned to the third page and filled that, marking it at the top, "2nd page," and then turned to the second page, containing in print at the top, the appointment of the executor, and the attestation clause, and marked it at the top "3rd page," and the will was thereupon executed by the testatrix affixing her signature at the end of the printed matter

on the second page, the witnesses also affixing their signatures at the foot of the printed attestation clause on the same page.

The will on the first and second pages was complete, and the court observed that "there is nothing to prevent filling up the vacant third and fourth pages with any number of additional provisions, including, as in this case, a residuary clause, allowing an executor to dispose of the residue in such manner as he deemed proper," but added, "The question is not whether from the proofs in this case the page following the signatures of the will is in fact a part of testatrix's will by reason of her established intention, but is the instrument so drawn, subscribed at the end thereof as the statute commands?" (Matter of Andrews, 162 N. Y. 1—citing Sisters of Charity v. Kelly, 67 N. Y. 409; Matter of O'Neil, 91 N. Y. 516; Matter of Conway, 124 N. Y. 455; Matter of Whitney, 153 N. Y. 259; Matter of Blair, 152 N. Y. 645, 84 Hun, 581; Willis v. Lowe, 5 Notes of Cases, 428; Re Parslow, id. 712; Re Tookey, id. 386; Ayres v. Ayres, id. 375; Sweetland v. Sweetland, 4 Swabey & Tristram, 6; Smee v. Bryer, 6 Moore's P. C. Cases, 404; Hays v. Hurden, 6 Penn. St. 409; Glancy v. Glancy, 17 Ohio St. 134.)

A will will be denied probate, when it appears, from the evidence of experienced handwriting experts, coupled with surrounding facts and circumstances, that the alleged signature of the testator is a forgery, although the two attesting witnesses gave positive testimony as to the execution of the instrument, and identified it, as they might be honestly mistaken, and their signatures upon the paper propounded reproduced from a genuine document not brought to light. (Matter of Albinger, 30 Misc. 187.)

It was held in *In re* Fitzgerald's Will, 33 Misc. Rep. 325, that the fact that the will was written on three sheets of note paper did not impair its validity, when it also appeared that the several sheets had appended to them the testatrix's signature, all for the obvious purpose of identifying each sheet as a part of the will. (Citing Matter of Snell, 32 Misc. Rep. 611, and cases cited.)

In Matter of Murphy, 48 App. Div. 211, however, the court held (although the point was not in controversy) that when a will is written "fly-leaf" (or where the fold is at the top of the instrument), and not "bookwise" (or where the fold is at the side), the sheets, being separate, must be fastened at the top by ribbon, metal clasp, mucilage, or other object.

Where, however, blank spaces intervene between the end of the instrument and the subscription, or provisions follow the subscription, probate will be refused. (*Re* O'Neill, 91 N. Y. 516; *Re* Whitney, 153 id. 259; *Re* Andrews, 43 App. Div. 294; *Re* Fults, 42 id. 593; *Re* Conway, 124 N. Y. 455.)

Probate of a will which is partly printed and partly written, will not be refused because there are blank spaces between the written and printed matter not ruled off. (Matter of Murphy, 48 App. Div. 211.)

When a testatrix in the presence of two witnesses writes her name in a blank space left purposely by her in the attestation clause, and thereupon declares the paper to be her will, and requests the witnesses to sign as subscribing witnesses, which they do in her presence, there is a sufficient subscription by testator at the end of the instrument. (Matter of Noon, 31, Misc. 420, 65 N. Y. Supp. [99 St. Rep.] 568—citing Matter of Acker, 5 Dem. 19; *Re* John Walker, 2 Swaby & Tristam, 354; Sisters of Charity v. Kelly, 67 N. Y. 409; Matter of Andrews, 162 N. Y. 1.)

A will partly written and partly printed, and which is signed at the end as required by the statute, will be refused probate when it appears that another paper on which was written several bequests was attached to the will by means of pins at the end of the second clause thereof, although no fraud was intended. (Matter of Fults, 42 App. Div. 593, 59 N. Y. Supp. 780. See also Matter of Whitney, 153 N. Y. 259, 47 N. E. R. 272; reversing 90 Hun, 138, 70 St. Rep. 259, 35 N. Y. Supp. 798.)

A testator's signature after the attestation clause, when nothing intervenes, is a signing at the end of the will. Matter of Laudy, 78 Hun, 479, 60 N. Y. St. Rep. 700, 29 N. Y. Supp. 574, 62 N. Y. St. Rep. 225, 30 N. Y. Supp. 848.)

Otherwise, when clauses of the will intervene between the signature and attestation clause. (Matter of Sanderson, 9 Misc. 574, 62 N. Y. St. Rep. 225, 30 N. Y. Supp. 848.

### ACKNOWLEDGMENT.

The will (even though holographic, and though the witnesses saw decedent's signature, and read the attestation clause or a portion thereof, including the words therein, "will and testament") must be either signed in presence of the attesting witnesses, or acknowledged to each of them by the testatrix as her will, and also declared by, or in some way communicated by,

her to the witnesses that it was her will. (Matter of Turell, 166 N. Y. 330; affirming s. c. 28 Misc. 106.)

Two of the subscribing witnesses to a will testified that all the statutory requirements were complied with, except only that the deceased did not sign the instrument in their presence or exhibit her signature to them. The will was holographic, and decedent was an intelligent woman. Three witnesses signed the attestation clause: The third witness, not examined, made no question as to its accuracy. Held, on the testimony of a fourth witness, who testified that every statutory formality was complied with, that the will should be admitted to probate. (*In re* Fitzgerald's Will, 33 Misc. Rep. 325—citing Matter of Cottrell, 95 N. Y. 329; Matter of Carey, 24 App. Div. 541, 542; Code Civ. Pro. sec. 2620.)

If the witnesses do not see testator sign, but see testator's signature, acknowledgment by testator is not necessary, provided the will is duly published. (Matter of Markey, 110 N. Y. 611; Matter of Bernsee, 141 N. Y. 389.)

Where there is no fraud, if the signature of testatrix is visible and the witnesses hear the acknowledgment, and the declaration by testatrix that it is her will, but they do not look closely to see the signature thus acknowledged, probate should not be refused because the witnesses are ignorant, careless or indifferent. An inflexible rule that the witnesses must remember that they not only saw, but recognized and identified the signature of the testator at the time of acknowledgment, would sometimes defeat the object of the statute and lead to injustice. (Matter of Laudy, 161 N. Y. 429, 55 N. E. 914; reversing Matter of Laudy, 31 App. Div. 630.)

Acknowledgment to one witness is insufficient when neither witness saw testatrix sign, nor saw her signature. (Matter of Abercrombie, 24 App. Div. 407, 43 N. Y. Supp. [82 St. Rep.] 414.)

Although one of the witnesses testified that testator did not sign will, or acknowledge it in his presence, the will may be admitted to probate when it appears from the evidence that there was a substantial compliance with the statute. (Matter of Carey, 24 App. Div. 531.)

The testator must sign before the witnesses sign, otherwise he must acknowledge his signature to them. (Matter of Blair, 16 Daly, 540, 16 N. Y. Supp. 875.)

## PUBLICATION.

Publication is as necessary in the case of a holographic will, as in other cases, although in the former case the facts of publication will not be so sharply scrutinized. (Matter of Turrell, 28 Misc. 106.)

It is not essential to the due publication of a will that the testator shall declare in express terms, in the presence of the subscribing witnesses, that the instrument is his last will. It is sufficient if he in some way makes known to them, by acts or conduct, if not by words, that it is intended and understood by him to be his will. (Matter of Sears, 33 Misc. 141—citing Lane v. Lane, 95 N. Y. 494.)

When a long lapse of time has intervened since the execution of a will, and it has been prepared and executed under the superintendence of the attorney of the testatrix, who was a capable woman, and its terms were equitable, and no subsequent will was executed, it will be admitted to probate, although the witnesses cannot recollect the fact of publication or request to sign, when it appears that the attestation clause signed by the witnesses recites the fact that such publication and request were properly made. (Matter of Sears, 33 Misc. 141—citing Nelson v. McGiffert, 3 Barb. Ch. 158; Matter of Bernsee, 141 N. Y. 389; Matter of Pepoon, 91 id. 255; Matter of Cottrell, 95 id. 329; Brown v. Clark, 77 id. 369; Matter of Graham, 9 N. Y. Supp. 122; Matter of Hunt, 110 N. Y. 278; Matter of Rounds, 7 N. Y. St. Rep. 730; Matter of Townley, 1 Connoly, 400; Matter of Wilcox, 14 N. Y. Supp. 109; Matter of Lantry, 5 id. 501; Matter of Frey, 2 Connoly, 70.)

When a will, after being written out, was read over to a testatrix, who then said, in the presence of both the subscribing witnesses that "it was all right," there is sufficient evidence of publication. (Matter of Buell, 44 App. Div. 4, 60 N. Y. Supp. [94 St. Rep.] 385.)

Probate will be refused when testatrix requested the only witness produced to sign the "instrument," even although a full attestation clause declared the instrument to be her last will. (Matter of Delgrat, 27 Misc. Rep. 355.)

### SIGNATURE OF WITNESSES AT TESTATOR'S REQUEST.

A full attestation clause supplies whatever omissions there are in the oral testimony as to the request to the witnesses to append their signatures. (Matter of Bernsee, 141 N. Y. 389.)

It is not necessary that the attesting witnesses should sign in

the presence of the testator.   In Matter of Phillips (Sur. Ct., N. Y. Co., 1901), 34 Misc. Rep. 442, the witnesses signed their names to the will in a room adjoining that in which the decedent was lying, and they did not agree as to whether the decedent could have seen them as they wrote their names.   All the other statutory formalities were complied with.   Held, that the will was entitled to probate—citing Lyon v. Smith, 11 Barb. 125; Ruddon v. McDonald, 1 Brad. 352; Herrick v. Snyder, 27 Misc. Rep. 462, 59 N. Y. Supp. 229.

The witnesses sign at the end of a will when they sign at the beginning of the fourth page of a sheet of note paper, the second and third pages being blank, and the testator's signature appearing at the foot of the first page.   (Matter of Singer, 19 Misc. 679, 44 N. Y. Supp [78 N. Y. St. Rep.] 606.)

When in substance and effect it appears that, either by testator's own direct request, or that of her attorney, who drew the will in her presence, and asking, in her aid and assistance, the two witnesses were requested to subscribe to it as her will, and as subscribing witnesses, held that the requirements of the statute were complied with.   (Matter of Voorhis, 27 St. Rep. 368, 7 N. Y. Supp. 596, 4 Silv. 504.)

The witnesses do not sign at the end of the will, when before its execution a clause is added after the attestation clause, and the witnesses sign at foot of the attestation clause and before the added clause, although the testator signs and seals same after the testimonium clause and also after the added clause, and the will is therefore not executed in accordance with the statutory requirement.   (Matter of Blair, 84 Hun, 581, 66 N. Y. St. Rep. 320, 32 N. Y. Supp. 845.)

### EXECUTION UNDER CODE CIV. PRO. SEC. 2620.

Where the subscribing witnesses to a holographic will, as well as the testator, were dead, and their signatures to the will (which was a natural one) were satisfactorily proved, and a notary testified that the testator brought the will (which was executed in 1863) to him in 1890 to "freshen it up," that testator detailed the circumstances of execution, showing that the statute had been complied with, and that he (the notary) thereupon drew an acknowledgment upon the will and testator signed and swore to it before him as a notary public, held, that although there was no attestation clause, yet as the most liberal presump-

tion in favor of due execution should (from the age of the document) be indulged in, although it was doubtful if it could be considered an ancient document, and as it appeared by the will itself that it was published and declared by the testator to be his last will and testament, and was signed, sealed and delivered on the 9th day of January, 1863, this, coupled with testator's declarations (which were competent evidence), sufficed to warrant the surrogate in admitting the will to probate under Code Civ. Pro. sec. 2620.    (Matter of Briggs, 47 App. Div. 47, 62 N. Y. Supp. [96 St. Rep.] 294.)

Where a witness (a lawyer) is dead, a will and codicil will be admitted to probate under Code Civ. Pro. section 2620 on proof of the handwriting of the testator and of the deceased witness, when there is a full attestation clause, although the surviving witness could not recollect the circumstances attending the execution of the will, but he did remember testator's request to him to sign as a witness and identified his signature under the attestation clause.    (Matter of Brissell, 16 App. Div. 137.)

When the signatures of testator and of a deceased witness have been proved, and another witness testifies the statutory formalities were complied with, a will will be admitted to probate, although a third witness was not absolutely certain he saw testator's signature at the time he witnessed the will, but thought he did, as the last page of the will was spread out before him. (Matter of de Haas, 19 App. Div. 266.)

To entitle a will to probate under section 2620, the testator's signature must be proved.    Where the testator signed by making his mark, and one of the witnesses was dead, and the other witness did not see the mark made, other evidence must be produced showing that testator actually made the mark.    (Matter of Porter's Will, 1 Misc. 262, 54 N. Y. St. Rep. 239, 22 N. Y. Supp. 1062.)